UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 18-56 (KBJ) |
| | : | Magistrate No. 17-453 |
| v. | : | |
| | : | |
| JEFFREY S. KAHN, | : | VIOLATION: |
| | : | 18 U.S.C. § 1001 |
| Defendant. | : | (Making a False Statement) |

FILED
JUN 0 4 2018
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, defendant **JEFFREY S. KAHN** (**"KAHN"**) and the United States agree and stipulate as follows:

1. At all times relevant to this case, defendant **KAHN** was employed by KeyPoint Government Solutions ("KeyPoint"), as an investigator under contract to conduct background investigations on behalf of the United States Office of Personnel Management ("OPM"), an agency within the executive branch of the federal government and headquartered in Washington, D.C.

2. OPM's Federal Investigative Services ("OPM-FIS"), now known as the National Background Investigations Bureau ("OPM-NBIB"), was responsible for conducting background investigations for numerous federal agencies and their contractors. OPM-FIS had an investigator workforce comprised of federal agents employed by OPM-FIS and investigators employed by various companies, including KeyPoint, under contract with OPM-FIS to conduct background investigations. OPM-FIS conducted background investigations of individuals who were either employed by or seeking employment with federal agencies or government contractors. The purpose of the background investigations was to determine individuals' suitability for positions having access to classified information, for positions impacting national security, for positions of

1

public trust, and for receiving or retaining security clearances.

3. In conducting these background investigations, contract investigators would conduct interviews of individuals who had information about the person who was the subject of the background investigation. In addition, investigators would seek out, obtain, and review documentary evidence, such as employment records, to verify and corroborate information provided by either the subject of the background investigation or by other persons interviewed during the investigation. After conducting interviews and obtaining documentary evidence, contract investigators would prepare a Report of Investigation ("ROI"), containing the results of the interviews and records reviews, and would electronically submit the ROI to OPM in Washington, D.C. OPM would then provide a copy of the investigative file to the requesting agency and maintain a copy in its records system.

4. The ROI containing the results of the interviews and records reviews conducted during a background investigation was utilized and relied upon by the agency requesting the background investigation to determine whether the subject of the investigation was suitable for a position having access to classified information, for a position impacting national security, for a position of public trust, or for receiving or retaining security clearance.

5. Between May 2013, and August 2013, in more than one-and-a-half dozen ROIs on background investigations, defendant **KAHN** represented that he had interviewed a source or reviewed a record regarding the subject of the background investigation when, in truth and in fact, he had not conducted the interview or obtained the record. These false representations were material, as they influenced the government's decisions and activities with respect to the subjects of those background investigations.

6. For example, on or about June 25, 2013, in the District of Columbia and elsewhere, defendant **KAHN**, in a matter within the jurisdiction of the executive branch of the government of the United States, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation, in that in an ROI of a background investigation of B.C., defendant **KAHN** represented that he had interviewed P.M. about B.C., when, in truth and in fact, defendant **KAHN** had not interviewed P.M. about B.C.

7. On or about June 25, 2013, defendant **KAHN** electronically submitted to OPM in Washington, D.C., his ROI on the background investigation of B.C., which contained the above-mentioned false representation. This false representation was material, as it influenced the government's decisions and activities with respect to B.C.

8. Defendant **KAHN**'s false representations in his ROIs on background investigations required OPM-FIS to reopen and rework numerous background investigations that were assigned to defendant **KAHN** during the time period of his falsifications, at an estimated cost of at least $77,649.33 to the United States government.

JESSIE K. LIU
United States Attorney
for the District of Columbia
D.C. Bar #472845

By: *Ellen Chubin Epstein*
ELLEN CHUBIN EPSTEIN
Assistant United States Attorney
D.C. Bar # 442861
Fraud & Public Corruption Section
555 Fourth Street, N.W., 5th Floor
Washington, DC 20530
(202) 252-1773
Ellen.Chubin@usdoj.gov

3

## **DEFENDANT'S ACCEPTANCE**

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged.

I have read every word of this Statement of Offense. Pursuant to Fed. R. Cr. P. 11, after consulting with my attorney, I agree and stipulate to this Statement of Offense, and declare under penalty of perjury that it is true and correct.

Date: June 4, 2018

JEFFREY S. KAHN
Defendant

I have discussed this Statement of Offense with my client, Mr. Kahn. I concur with his decision to stipulate to this Statement of Offense.

Date: 6/4/18

DAVID BOS, ESQ.
Attorney for the Defendant

4